2024 IL App (2d) 240516-U
No. 2-24-0516
Order filed November 25, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 24-CF-1645 |
| JAIRO A. MARTINEZ, | ) ) ) | Honorable Julia A. Yetter, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Kennedy and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in granting the State's petition for pretrial detention as its determination that defendant posed a danger to the community was not against the manifest weight of the evidence.

¶ 2   Defendant, Jairo Martinez, appeals from the trial court's order denying him pretrial release under article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes informally called the Pretrial Fairness Act (Act).  See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of P.A. 101-652); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective

date as September 18, 2023). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On July 23, 2024, defendant was charged with possession of a loaded firearm by a street gang member without a firearm owner's identification card (FOID card) (720 ILCS 5/24-1.8(a)(1) (West 2022)) (class 2 felony) and unlawful use of a weapon by a felon (*id.* § 24-1.1(a)) (class 3 felony).

¶ 5      The Stated filed a verified petition to detain defendant. 725 ILCS 5/110-6.1 (West 2022). The State alleged that there was probable cause to show that defendant committed the alleged offenses and that his pretrial release posed a real and present threat to the safety of any person or persons or the community. The State's petition noted that defendant had previous felony convictions for attempted delivery of methamphetamine and unlawful possession of a firearm without a FOID card.

¶ 6      On July 31, 2024, the trial court conducted a hearing on the State's petition. The State tendered the police synopsis, which indicated that, on July 29, 2024, at about 9:20 p.m., the reporting officer and two other detectives were conducting surveillance in a certain area of Elgin due to an increase in shootings and gang activity. One officer, upon seeing defendant walking away from a liquor store with two other men, radioed the information to the reporting officer and another officer who was with him in the patrol car. Shortly thereafter, the officers in the patrol car saw a man walking on a nearby street who was tall and skinny, with a long ponytail, wearing a black hat and a gray hoodie. The man looked similar to defendant, who was a known member of the Latin Kings street gang and who the reporting officer had previously arrested for unlawful possession of a firearm.

¶ 7 A short time later, the reporting officer noticed a man running down another street wearing a black hat and a colored hoodie. The officer illuminated the man with a spotlight and recognized him as defendant. The officer observed defendant grabbing his waistband and noticed that defendant's left arm was not swinging as he ran. The officers followed defendant in the squad car and yelled for him to stop. Defendant disregarded the command and started to run into a backyard. The reporting officer exited the squad car and began chasing defendant on foot. The reporting officer observed defendant "making a motion with his left shoulder like he was discarding something" just before jumping over a chain link fence. The officer ultimately apprehended defendant and found a loaded .38 Taurus revolver lying on the ground near the chain link fence. A check on the revolver's serial number indicated that it was not associated with any prior offenses.

¶ 8 The officers did not interrogate defendant immediately because defendant said he had consumed psilocybin mushrooms. The next day, at about 9 a.m., the reporting officer spoke with defendant, who said he did not remember what he did the night before or who he was with. The officer asked defendant if he remembered taking mushrooms the night before and defendant responded, "obviously I said it." Defendant stated that he ran from the officer out of a natural instinct because he had been chased by the police so many times. Defendant later stated that he did not know he was running from the police because he was "shroomed out." Defendant continued to deny that he knew he was running from the police and ultimately invoked his right to remain silent.

¶ 9 At the hearing, the State also tendered a police synopsis from a December 2020 incident that resulted in defendant's arrest. That synopsis indicated that defendant was found in possession of a weapon, did not possess a FOID card, and was not eligible for one because he had received

treatment in a mental health facility related to a domestic battery call at his residence in January 2019. The State noted that defendant had previous felony convictions for unlawful possession of a firearm without a FOID card and for attempted delivery of methamphetamine. Further, the State noted that, in 2016, defendant had been adjudicated delinquent for defacement of school property. He was placed on juvenile probation and electronic home monitoring (EHM) with the requirement that he not be involved in any other gang activity. After violating the rules of EHM and having contact with street gang members, defendant's juvenile probation was revoked. The State noted that defendant also had a juvenile adjudication for domestic battery against his mother in 2019.

¶ 10    The State argued that the synopsis provided sufficient evidence to show that defendant committed the charged offenses. The State argued that defendant was dangerous because he possessed a weapon when not allowed to and had a previous criminal history of violent behavior. The State further noted that the present offense occurred just seven months after defendant completed mandatory supervised release for a previous weapons offense. The State additionally argued that defendant was dangerous because he was found in an area known for gang violence while possessing a loaded weapon.

¶ 11    Finally, the State asserted that no conditions of release could mitigate the threat posed by defendant. The State noted that defendant was able to illegally obtain a weapon and had a history of violating conditions of release as demonstrated by the violations of his juvenile probation. The State further argued that, even if defendant was placed on GPS or EHM, he would still be able to obtain weapons and carry them into the community.

¶ 12    Defendant stated that he had been steadily employed in the construction industry for the last six months. Defendant argued that conditions of release would allow him to continue working and minimize his ability to associate with negative influences. Defendant noted that his last

reported gang activity was in 2017, his last possession of a weapon was almost four years ago, and the battery conviction happened five years ago. Further, as an adult, he successfully completed terms of conditional discharge and mandatory supervised release (MSR). Defendant requested that he be released with reasonable conditions.

¶ 13     Following argument, the trial court stated that it had considered the State's petition, the evidence presented, and the dangerousness factors in section 6.1(g) of the Code (*id.* § 110-6.1(g)). The trial court found that the State provided clear and convincing evidence that defendant committed the charged offenses. The trial court also found that defendant was a danger to the community. The trial court noted that defendant was a convicted felon who was not allowed to possess a firearm, and did not have a FOID card, but was nonetheless in possession of a loaded handgun. Defendant was also a documented Latin Kings street gang member. The trial court found that being a documented gang member and convicted felon in possession of a weapon posed a danger to the community.

¶ 14     The trial court also found that there were no conditions of release that could mitigate the threat posed by defendant. The trial court found that defendant had an inability to follow rules, as demonstrated by his continued possession of a weapon even though it was prohibited. The trial court found that EHM or GPS monitoring would still allow defendant to go to work and have, although limited, an unmonitored amount of time to be out in the community. As such, conditions of release could not prevent defendant from obtaining a firearm, committing new offenses, and threatening the safety of the community. The trial court granted the State's petition to detain defendant.

¶ 15     On August 23, 2024, defendant filed a motion for relief under Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). Defendant argued that there was insufficient evidence to prove that

he committed the alleged offenses, that he was a danger to the community, or that conditions of release could not mitigate his potential threat. Following a hearing, the trial court denied the motion for relief. The trial court found that the police synopsis provided clear and convincing evidence that defendant likely committed the alleged offenses. The trial court stated that defendant was a danger to the community based on the following: when the police told defendant to stop, he continued to run; defendant possessed a loaded firearm; and defendant had allegedly committed the foregoing while under the influence of psilocybin mushrooms. Finally, the trial court found that conditions of release could not mitigate the threat posed by defendant because he could not be trusted to comply with any such conditions.

¶ 16    Following the denial of his motion for relief, defendant filed a timely notice of appeal.

¶ 17                                II. ANALYSIS

¶ 18    In Illinois, all persons charged with an offense are eligible for pretrial release. *Id.* §§ 110-2(a), 110-6.1(e). Pretrial release is governed by article 110 of the Code as amended by the Act. *Id.* § 110-1 *et seq.* Under the Code, as amended by the Act, a defendant's pretrial release may only be denied in certain statutorily limited situations. *Id.* §§ 110-2(a), 110-6.1(e).

¶ 19    Upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense (*id.* § 110-6.1(e)(1)), (2) the defendant's pretrial release would pose a real and present threat to the safety of any person or persons or the community (*id.* § 110-6.1(e)(2)), and (3) no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or prevent the defendant's willful flight from prosecution (*id.* § 110-6.1(e)(3)). "Evidence is clear and convincing if it leaves

no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question ***." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 20 We review the trial court's decision to deny pretrial release under a bifurcated standard. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. Specifically, we review under the manifest-weight-of-the-evidence standard the trial court's factual findings as to dangerousness, flight risk, and whether conditions of release could mitigate those risks. *Id.* A finding is against the manifest weight of the evidence only where it is unreasonable or not based on the evidence presented. *Id.* We review for an abuse of discretion the trial court's ultimate determination regarding pretrial release. *Id.* An abuse of discretion occurs only when the trial court's determination is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 21 On appeal, defendant does not challenge the trial court's finding that the State met its burden on the first proposition—whether the proof was evident, or the presumption was great, that he committed a detainable offense. Defendant also does not challenge the third proposition—that no conditions of release can mitigate the threat he poses to the community. Rather, he challenges only the trial court's determination that he posed a real and present threat to the safety of the community.

¶ 22 The Code provides a nonexclusive list of factors that the trial court may consider when making a determination of "dangerousness," *i.e.*, that a defendant poses a real and present threat to any person or the community. 725 ILCS 5/110-6.1(g) (West 2022). Specifically, in making this determination, the court may consider evidence or testimony as to factors that include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon or a sex offense; (2) the history and

characteristics of the defendant; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Code. *Id.* The statute does not list any singular factor as dispositive. *Id.*

¶ 23    In the present case, defendant argues that the trial court did not make an individualized finding of his threat to community safety, instead relying solely on the general dangerousness of the charged offenses. However, our review of the record shows this assertion to be incorrect. The trial court stated that it considered the statutory dangerousness factors, several of which were present and specific to this defendant: the offense involved a *loaded* firearm (725 ILCS 5/110-6.1(g)(1) (West 2022)); defendant was a known gang member (*id.* § 110-6.1(g)(2)); his juvenile adjudication for domestic battery indicated a history of violent or abusive behavior (*id.* § 110-6.1(g)(2)(A)); and defendant was charged with unlawful possession of a firearm (*id.* § 110-6.1(g)(7)). The trial court also considered that, at the time of his arrest, defendant was a convicted felon and prohibited from possessing a gun. This demonstrates dangerousness. See *People v. Lee*, 2024 IL App (1st) 232137, ¶ 27 (noting "the inherent dangerousness of firearms, particularly when they are in the possession of those who have been prohibited from possessing them"); see also *People v. Hongo*, 2024 IL (1st) 232482, ¶ 36 (the defendant's possession of a weapon while prohibited suggests that continued detention is necessary to mitigate safety risks). Additionally, the trial court considered that, during the offense, defendant disobeyed a police command to stop

and continued running while in possession of a loaded firearm. The trial court also took into account that defendant admitted to being on drugs at the time. The record thus shows that the trial court made an individualized determination of defendant's dangerousness, based on specific evidence, rather than merely relying on the general dangerousness of the charged offenses. Therefore, the trial court's finding that defendant posed a real and present threat to the safety of the community was not against the manifest weight of the evidence.

¶ 24                                   III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 26    Affirmed.